

_____ FILED
_____ LODGED
_____ RECEIVED

**MAIL**

NOV 16 2021

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

RAQUEL REYNOLDS, a single person,   )
                                    )
                  Plaintiff,        )
vs.                                 )
                                    )
CITY OF SEATTLE; SEATTLE POLICE     )
DEPARTMENT; OFFICER PETE            )
CAVINTA, JR. and JANE DOE CAVINTA,  )
husband and wife and the marital    )
community comprised thereof; OFFICER )
SCOTTY BACH and JANE DOE BACH,      )
husband and wife and the marital    )
community comprised thereof; OFFICER )
DANIEL KIM and JANE DOE KIM, husband )
and wife and the marital community  )
comprised thereof; OFFICER GERMAN   )
BARRETO and JANE DOE BARRETO,       )
husband and wife and the marital    )
community comprised thereof; KIRA   )
GUZMAN and JOHN DOE GUZMAN, wife    )
and husband and the marital community )
comprised thereof; RAYMOND FISCHER  )
and JANE DOE FISCHER, husband and   )
wife and the marital community comprised )
thereof; and OFFICE OF POLICE       )
ACCOUNTABILITY,                     )
                  Defendants.       )
_____)

**NO.**  2:21-CV-01560-RSM

**COMPLAINT FOR
UNLAWFUL ARREST
EMOTIONAL DISTRESS
PERSONAL INJURIES
ASSAULT
VIOLATION OF FOURTH AND
FOURTEENTH AMENDMENT RIGHTS
LOSS OF INCOME**

**Jury Demand**

    **COMES NOW RAQUEL REYNOLDS** (hereinafter Plaintiff), appearing Pro se and

alleges as follows:

COMPLAINT - 1

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

## I. PARTIES and JURISDICTION

That at all times material herein, Plaintiff was a single person, residing in the City of Seattle, King County, State of Washington and therefore subject to the jurisdiction of the above-referenced Court.

That at all times material herein, Defendant City of Seattle, (hereinafter City), was a city located in King County, State of Washington and therefore subject to the jurisdiction of the above-referenced Court.

That at all times material herein, Defendant Seattle Police Department, (hereinafter SPD) was a law enforcement agency authorized to do and doing business in the City of Seattle, located in Seattle, King County, State of Washington and therefore subject to the jurisdiction of the above-referenced Court.

That at all times material herein, the Office of Police Accountability (hereinafter OPA) was representing the SPD to assess complaints regarding the actions and resulting accountability of the Defendants named below.

That at all times material herein, Defendant Police Officer Pete Cavinta, Jr. (hereinafter Defendant) was an employee of the SPD and acted as an agent for said SPD and all acts committed therein were authorized by and committed for and on behalf of the SPD and therefore subject to the jurisdiction of the above- referenced Court.  That at all times material herein, Officer Cavinta and Jane Doe Cavinta, comprised a marital community and therefore subject to the jurisdiction of this Court.

That at all times material herein, Defendant Police Officer Scotty Bach (hereinafter Defendant) was an employee of the SPD and acted as an agent for said SPD and all acts committed therein were authorized by and committed for and on behalf of the SPD and thereby subject to the jurisdiction of the above-referenced Court.  That at all times material herein,

COMPLAINT - 2

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

Officer Bach and Jane Doe Bach, comprised a marital community and therefore subject to the jurisdiction of this Court.

That at all times material herein, Defendant Police Officer Daniel Kim (hereinafter Defendant) was an employee of the SPD and acted as an agent for said SPD and all acts committed therein were authorized by and committed for and on behalf of the SPD and thereby subject to the jurisdiction of the above-referenced Court.   That at all times material herein, Officer Kim and Jane Doe Kim, comprised a marital community and therefore subject to the jurisdiction of this Court.

That at all times material herein, Defendant Police Officer German Barreto (hereinafter Defendant) was an employee of the SPD and acted as an agent for said SPD and all acts committed therein were authorized by and committed for and on behalf of the SPD and thereby subject to the jurisdiction of the above-referenced Court.   That at all times material herein, Officer Barreto and Jane Doe Barreto, comprised a marital community and therefore subject to the jurisdiction of this Court.

That at all times material herein, Defendant Police Officer Kira Guzman (hereinafter Defendant) was an employee of the SPD and acted as an agent for said SPD and all acts committed therein were authorized by and committed for and on behalf of the SPD and thereby subject to the jurisdiction of the above-referenced Court.   That at all times material herein, Officer Guzman and John Doe Guzman, comprised a marital community and therefore subject to the jurisdiction of this Court.

That at all times material herein, Defendant Police Officer Raymond Fischer (hereinafter Defendant) was an employee of the SPD and acted as an agent for said SPD and all acts committed therein were authorized by and committed for and on behalf of the SPD and thereby subject to the jurisdiction of the above-referenced Court.   That at all times material herein,

COMPLAINT - 3

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

Officer Fischer and Jane Doe Fischer, comprised a marital community and therefore subject to the jurisdiction of this Court.

## II. BACKGROUND

That Plaintiff had sole ownership of her residence located at 5642 44th Avenue S.W., Seattle, Washington, 98136 (hereinafter residence).

That Plaintiff was hospitalized February 12th through March 3, 2020 with a broken neck and contracted and has in fact suffered from COVID-19 on two (2) occasions with ongoing symptoms. That Plaintiff was forced to recuperate at her elderly parent's residence with them taking care of her, as Martinez would not allow Plaintiff to return to her own residence.

That at the time of the incident, Plaintiff's sister, Maria Martinez, (hereinafter Martinez) had taken over Plaintiff's residence, illegally changed the locks, and refused to allow Plaintiff to return to live in her own home. This also disallowed Plaintiff a regular income from her home-based business which allowed for dogs, accompanied by their owners, to run free in her large, fenced front yard. This was by appointment. Martinez directly affected this business by her taking over Plaintiff's residence. Martinez would leave barriers down, gates unlocked, and caused damage to the property.

That Plaintiff's belongings, including furniture and furnishings, medication, clothing, etc. were still located in her residence, and in fact Martinez stole and sold Plaintiff's personal property. Plaintiff's mailing address and mailbox remained at her residence for her mail as the residence owner. Martinez illegally put up a mailbox although a single family home and maintained another address at a Mailbox facility for her mail. Martinez was not the residence owner under any circumstances whatsoever.

COMPLAINT - 4

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

That notices to vacate Plaintiff's residence dated 6-11-19, 11-12-19, 12-6-19, and 1-7-20 were personally served leaving such in a conspicuous place in Plaintiff's residence by Plaintiff and her Father, David Martinez.

That Martinez intentionally avoided service of process.

That Martinez has two parcels of land, with one residence of her own on Camano Island in Island County, Washington and in fact just recently paid a three (3) year old overdue property tax bill in Island County.

That Martinez has extreme long-term mental issues for which she takes medication and sees a therapist. Plaintiff was and is literally afraid for her life at the hands of her sister Martinez to this day.

That Martinez had made it clear to Petitioner, her family, and particularly to her Father, David Martinez, that she was going to have Plaintiff thrown in jail for something and that Petitioner had better not return to her own residence.

That Martinez made good on her promise by orchestrating the August 28, 2020 incident with the assistance of the SPD.

### III. **INCIDENT AT ISSUE**

That on August 28, 2020, Plaintiff and her brother, Enrique Martinez (now deceased) who had previously been assaulted by Martinez, went to her own residence, and entered the basement which is only accessible through a separate outside lower side access door. The purpose of the visit to her own residence was to do some cleaning and recycling of paint and boxes, with the assistance of her brother. Enrique Martinez left approximately two (2) minutes before Plaintiff, walking back to their parents' residence through the back alley by the backdoor entrance. Plaintiff was leaving the property down to her vehicle in the front of her residence on 44th Avenue S.W., with a small empty box she intended to use to hold paint, when she was

COMPLAINT - 5

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

assaulted by Martinez.

That Martinez suddenly came running through Plaintiff's residence, out the back alley door after Enrique Martinez was out of sight.   This was allegedly for a box and admittedly knocked the empty box out of Plaintiff's hands. Plaintiff only realized Martinez was coming from behind her by a neighbor, Robin, saying, "Hi Maria".  Plaintiff was not talking to the neighbor as falsely stated by Martinez as the neighbor was only a friend of Martinez and does not speak to the Plaintiff and is a hostile neighbor.  After that, Martinez physically took possession of the empty box and assaulted Plaintiff.  See Exhibit "7" lock on interior door Martinez claimed was in "the box".

Martinez allegedly sustained a couple of "scratches" (barely visible in Exhibit "7") on her left arm as Plaintiff was defending herself after Martinez attacked her by surprise and grabbing the empty box.  Martinez admittedly was the Primary Aggressor.  Martinez knew Plaintiff had undergone surgery for a broken neck, had suffered from COVID-19, nerve damage, and epilepsy and took advantage of the injuries and weakness when she overtook Plaintiff grabbing her by the neck.

That Plaintiff called 9-1-1 to report the incident and request help.  Plaintiff's voice and reporting was that of an upset, afraid individual calling for help from the SPD.  Plaintiff asked the SPD to remove Martinez from her residence, but they refused based on the false information provided by Martinez that she received mail there, although that was not the case, and that Martinez had threatened Plaintiff's life.  See Exhibit "2".

That upon realizing Plaintiff called 9-1-1, Martinez followed-up with her own call to 9-1-1 to fabricate her version of what occurred.  That Martinez told the 9-1-1 operator that the reason she was calling was just that, because Plaintiff had called.  At no time during said call did Martinez sound upset or anxious.  See Exhibit "5".  Instead, Martinez discussed her schooling

COMPLAINT - 6

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

and other non-issue topics.  That Martinez told the operator that she "hated living there" and when the operator asked her why she would not move out, there was no logical explanation. Again, as previously stated, Martinez has another residence and additional property on Camano Island in Island County, Washington, and the residence where the incident occurred belonged to Plaintiff only.  See Exhibit "18".

### IV.  POLICE OFFICERS ACTIONS – 8-28-20

That the Defendants arrived at Plaintiff's residence, parking some distance from the scene.

That the Defendants entered Plaintiff's residence with Martinez, not Plaintiff.  That Martinez was questioned by the Defendants, with many of the questions being leading, including but not limited to "Did you give Raquel permission to do what she did to you?" on two (2) separate occasions, etc.  See Exhibit "22".

That Plaintiff was barely questioned and definitely not listened to by the Defendants.

That Plaintiff's parents, Grace, and David Martinez arrived on the scene as they reside only six (6) blocks away from the 44th Avenue SW address.  That they attempted to reason with the Officers that Martinez did not reside there, that Plaintiff was in danger, and that Plaintiff had extreme medical conditions.  In fact, Grace Martinez, Plaintiff's Mother, told the Officers that they "have the wrong person", they were "arresting the wrong person".  Grace Martinez stated about Martinez "She did that to herself!", regarding a "scratch" barely visible on Martinez.  See Exhibit "7".

That despite Plaintiff having initiated the 9-1-1 call for help, and not listening to anyone other than Martinez, Defendants handcuffed Plaintiff and put her in Defendant Gunzer's patrol car. Unlawful imprisonment is the intentional confinement of another's person, unjustified under the circumstances.  Plaintiff is noted to be the first reporter and called the police for help.

COMPLAINT - 7

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

Instead, they arrested her based on leading testimony fed to Martinez and knowingly and unjustly arrested the wrong person.    Tufte v. Tacoma, 71 Wn.2d 866, 870, 431 P.2d 183.

**RCW 10.31.100 (2)(d) – Background Check.**

That at no time did Defendants' review Martinez' criminal record although spelled out in the 9-1-1 call by Plaintiff.    Exhibit "10".  RCW 10.31.100 (2)(d) "The officer shall arrest the person whom the officer believes to be the primary physical aggressor. **In making this determination, the officer shall make every reasonable effort to consider: (A) The intent to protect victims of domestic violence under RCW 10.99.010; (B) the comparative extent of injuries inflicted or serious threats creating fear of physical injury; and (C) the history of domestic violence of each person involved, including whether the conduct was part of an ongoing pattern of abuse."**

Martinez had previously been arrested for assaulting her brother, Enrique Martinez, grabbing, kicking, scratching, and biting him.  Photographs Exhibit "7".

Enrique Martinez stated "In all of Raquel's 51 years I have never known her to be violent. Maria on the other hand was arrested a few years ago after she attacked me, kicking and biting me. She had been drinking after she took the drug Lunesta. She has been taking doctor prescribed medications for most of her life starting with Prozac in her early twenties." Declaration Exhibit "13", and a former renter who called 9-1-1 to report Martinez's aggressive behavior toward her, knocking personal possessions from her hands, including a phone to the floor, and stepping on it.   This pattern was repeated by Martinez when she saw Plaintiff was going to call 9-1-1 after the assault on Plaintiff, ripped the phone from Plaintiff's hands and stepped on it.  However, Plaintiff was able to retrieve her phone and call 9-1-1.

That at no time did Defendants' review who was the legal owner of the residence although spelled out in the 9-1-1 call by Plaintiff and Plaintiff was known to Defendant Bach. At

COMPLAINT - 8

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

the scene Plaintiff repeatedly stated it was her residence and Martinez needed to be removed. Defendants ignored her.

Plaintiff's mother, Grace Martinez kept stressing to the Defendants that they were arresting the wrong person, knowing the ongoing mental/aggressive state of Martinez, and was ignored. Grace Martinez told the Defendants that Martinez had "done that to herself" in regard to Martinez's "scratches". In fact, Martinez could easily have scratched herself intentionally, or when assaulting Plaintiff for the empty box.

Martinez also falsely stated that she was disabled and unable to run, yet later explained how she ran back to the residence (Plaintiff's residence).

No one spoke to Enrique Martinez who had been a prior victim of Martinez and had left the scene only minutes before Martinez saw Plaintiff alone and leaving, with only Martinez's friend Robin witnessing, when Martinez admittedly attacked Plaintiff. Martinez knew Plaintiff was cleaning out the basement because "her bedroom – windows" were directly above the outside basement door. It was completely choreographed by Martinez and Defendants failed to do their job by investigating Plaintiff's completely credible account of the attack.

Plaintiff's mother, Grace Martinez asked that the Defendants allow Plaintiff to take her necessary medication and that such was approximately six (6) blocks away at Grace Martinez's residence. Defendants informed her that they "were not going that way".

On the other hand, Defendants asked the actual Primary Aggressor Martinez if she would like an ambulance and provided her with ice packs although there were close to twenty (20) icepacks in Plaintiff's freezer that Martinez was using. Plaintiff was not provided with anything and in fact denied necessary medication.

While being "interviewed" by Officer Barretta at the rear entrance of Plaintiff's residence, Martinez was seen by her father, David Martinez, to be laughing and joking. During this

COMPLAINT - 9

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

interview with Officer Barretta, it clearly shows by the evidence attached hereto and incorporated herein by reference, that Defendant Barretta was asking leading questions and suggesting answers to Martinez.  Exhibit "22".

Some of the gross errors in the redacted police report:

1.  Martinez came out of Plaintiff's residence to fight for the empty box.  Martinez verified she was after the box in Plaintiff's hands.  Martinez stated that it contained a lock.  Martinez was therefore the Primary Aggressor attacking Plaintiff after exiting Plaintiff's residence to grab the box.  There was no lock in the box.  The lock was on the door, installed there by Martinez herself.  See Exhibit "7" attached hereto and incorporated herein by reference.

2.  Martinez claimed that Plaintiff dragged her forty (40') feet but no shoulder or back pain was noted as well as the alleged dragging itself leaving marks.  See Exhibit "7".

3.  Under CONFIDENTIAL Defendants note several wrong residential addresses:

5027 41st Ave

5642 42nd Ave.

5623 44th Ave. (an address across the street from her home where she had previously resided with her ex-husband, Aaron Reynolds, a former SPD officer.)   Only the Defendants personally known to Plaintiff would have known that address, i.e. Scotty Bach.

Plaintiff's driver's license, which none of the Defendants asked her for ID, shows the correct address 5642 44th Ave. S.W., Seattle, WA, 98136.

4. COVID law itself and Plaintiff's weakness, continued symptoms, and ailments, along with nerve damage and required medication, were not considered in Defendants' "assessment" of the situation.   Plaintiff would have been unable to assault Martinez, especially with Martinez suddenly approaching from behind, with a prior broken neck and severe pain in all extremities, especially her arms as a result of having COVID-19.  See Exhibit "7".

COMPLAINT - 10

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

5. Defendants' state, Plaintiff had "no visible injuries", however Martinez crushed Plaintiff's throat area, already scarred resulting from Plaintiff's broken neck and arm pain from the surgery and extreme nerve damage from such and COVID-19 aftereffects. See Exhibit"7".

6. Plaintiff explained her neck surgery and showed her scar, that she required medication, yet none of the Defendants asked about that injury or took it into consideration regarding their acceptance of the false allegations made by the Second Reporter, actual Primary Aggressor, Martinez.

7. Plaintiff sustained injuries from Martinez, including bruising, not documented by the Defendants. See Exhibit "7". This along with the illegal arrest is Assault and Battery. See <u>State v. Robinson</u> (1950), 72 A. (2d) (Me.) 260, where it was said:

"An illegal arrest is an assault and battery. The person so attempted to be restrained of his liberty has the same right, and only the same right, to use force in defending himself as he would have in repelling any other assault and battery."

Plaintiff was assaulted by Defendants when they forcefully grabbed her, placing handcuffs on her previously damaged wrists from surgery and COVID-19 nerve damage, as well as the injuries inflicted by Martinez when she attacked Plaintiff. Plaintiff begged Defendants not to touch her because of her pain. Officer Guzman stated that she had performed the one (1) finger test on the handcuffs to Plaintiff. She also asked if Plaintiff wanted two (2) sets of handcuffs as though that would have been any less painful on Plaintiff's already damaged wrists and hands from surgery, COVID-19 and Martinez attacking and assaulting her. Plaintiff was forcefully handcuffed behind her back.

8. Plaintiff and Martinez were noted to be "White/Not Hispanic Or Latino". The parties are Mexican. Officer Scotty Bach, known to Plaintiff and Plaintiff's ex-husband/former police officer, Aaron Reynolds, knew Plaintiff was Mexican, as well as her sister/Primary Aggressor

COMPLAINT - 11

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

Martinez.  Exhibit "11".

      9.  Relationship History and Risk Assessment –

             Description of past incidents of living together, activities, etc.  Instead, they noted that Plaintiff and Martinez did not ever reside together.

      10.  Plaintiff was 51 years old, not 54 years old.

      11.  Injuries/pain Diagram is left blank by Defendants although this is protocol.

      12.  Plaintiff's mother, Grace Martinez, did not "come outside", referring to coming out of Plaintiff's residence.   Grace Martinez walked, with a walker, from her own residence approximately six (6) blocks away.

### V.  OFFICE OF POLICE ACCOUNTABILITY

That Plaintiff made a Complaint to the Office of Police Accountability (hereinafter OPA). That the Complaint was not answered in a timely manner.  That the Complaint was void of any actual interviews, contact, etc. with the named parties.

That Plaintiff found that OPA has a track record of mishandling legitimate Complaints as set out in Exhibit "24".  Plaintiff was denied a fair outcome of her Complaint due to the "pick and choose" non-investigation.   Plaintiff's Complaint was an "Expedited Investigation" as set out below:

"**A complaint is classified for Expedited Investigation if OPA believes it can issue findings based primarily on its intake investigation. In most cases, OPA will not conduct interviews of Named Employees.** Per collective bargaining agreements, if OPA does not interview a named employee, allegations against that individual cannot be sustained. For this reason, Expedited Investigations are sometimes used to resolve allegations OPA is required to investigate - such as excessive force, bias, and violations of law - but where an objective assessment of available evidence (typically In-Car Video and/or Body Worn Video) establishes that no policy violation occurred. **This type of investigation was developed to minimize the impact on named employees."**

COMPLAINT - 12

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

## V. <u>FOURTH AMENDMENT TO THE CONSTITUTION</u>

The **Fourth Amendment (Amendment IV)** to the <u>United States Constitution</u> is part of the <u>Bill of Rights</u>. It prohibits unreasonable <u>searches and seizures</u>. In addition, it sets requirements for issuing <u>warrants</u>: warrants must be issued by a judge or magistrate, justified by <u>probable cause</u>, supported by oath or affirmation, and must particularly describe the place to be searched and the persons or things to be seized.

Fourth Amendment case law deals with three main issues: what government activities are "searches" and "seizures", what constitutes probable cause to conduct searches and seizures, and how to address violations of Fourth Amendment rights. Early court decisions limited the amendment's scope to physical intrusion of property or persons, but with *Katz v. United States* (1967), the <u>Supreme Court</u> held that its protections extend to intrusions on the privacy of individuals as well as to physical locations.

Plaintiff's Fourth Amendment rights were violated by "unreasonable" and illegal searches and seizures.

No warrant was issued, the "place" belonging to Plaintiff was described in the 9-1-1 call made by Plaintiff to be her residence.

Plaintiff was unreasonably seized, her body searched, and was illegally arrested without cause.

Plaintiff was unreasonably searched, her privacy intruded upon, and was not given the right to her Fourth Amendment protections.

Plaintiff was not protected. Plaintiff was in fact further injured by Defendants by their handcuffing her after explaining her neck, shoulder, arm, and hand pain, denying her necessary medication only in providing a Tylenol, and placing her in a cell without food, an explanation as to any charges against her, when she would be arraigned or receive a speedy trial. Please see

COMPLAINT - 13

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

Exhibit "16" wherein it states during an exit interview with Officer Brian Patenaude, amongst 17 others in 2019:

> He also said that he didn't believe that handcuffs had to be more comfortable. "Most arrestees have abscesses on their wrists from injecting illegal drugs," he wrote. Multiple SPD officers said the requirement to document any pain on the part of someone being handcuffed is overly bureaucratic and can delay the arrest.

In Exhibit "16" former Police Chief Carmen Best in 2019 stated in regard to documenting pain:

> SPD Chief Carmen Best said in an interview they have revised the policy recently to make it easier to follow. "If the person has any pain in handcuffing we'll document that pain so we can track all of it," she said. "We made that process a lot more streamlined for officers so they can annotate it, because we don't want to lose the information. But there's not the same level of paperwork that was required previously."

Plaintiff sincerely and with just cause believed she was going to die from the extreme stress, intolerable pain, denial of her medication and prayed what she believed was her last prayer. All evidence verifying these issues is recorded on video, although with portions redacted. This is the fear the SPD inflicted and Plaintiff was certainly not protected from.

Plaintiff was not protected when she was suddenly released the next day, with no arraignment, with no speedy trial, without explanation, and later receiving a "Notice of Charges Pending" saying that she was being released, but that charges could be brought against her in the future, thereby inflicting long-term intentional emotional distress to this day. Exhibit "4".

Plaintiff is therefore asking for said "Notice of Charges Pending" to be withdrawn and her record vacated.

Plaintiff was not protected when she contacted the proper authorities as to vacating the non "charges" against her, when informed there were no charges that could be vacated. However, the arrest would remain on Plaintiff's record and thereby inflicting personal severe monetary restrictions in securing employment.

COMPLAINT - 14

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

Plaintiff was not protected when Defendants simply handed over her residence and business to Martinez which further denied her income.

Plaintiff was not protected in rewarding Martinez Plaintiff's residence, and instead arresting Plaintiff.  Consequently, Plaintiff and her parents, Grace and David Martinez were responsible for paying the mortgage, utilities, taxes, etc.

That Plaintiff called 9-1-1 for protection against Martinez who later by her own admission of being the Primary Aggressor on August 28, 2020, and to have her removed from her residence.  However, Plaintiff received no protection whatsoever from the City of Seattle, SPD or any of the Defendants named in this lawsuit.

Plaintiff was instead confronted by Sergeant "Scotty" Bach with whom she had a friendly mutual relationship with along with her ex-husband, Aaron Reynolds formerly with the SPD. However, Sergeant Bach had visibly sided with her ex-husband during their divorce, and Defendant Bach instead denied knowing Plaintiff. It was Bach who told the Defendants at the scene to "Take her away".

That Defendant Bach was later identified as one of the officers at the January 6, 2021 Insurrection at the Capitol, along with others, and was in fact demoted from Lieutenant back to Sergeant during this time-frame.  See Exhibit "1".

Plaintiff's rights under the Fourth Amendment to the Constitution were violated by all named Defendants.

## VI.  FOURTEENTH AMENDMENT TO THE CONSTITUTION

**Fourteenth Amendment Section 1**

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the

COMPLAINT - 15

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Plaintiff was naturalized in the United States, thereby subject to its jurisdiction.

Plaintiff is a citizen of the United States and the State of Washington.

Plaintiff was deprived of her liberty and property without due process of law.

Defendants falsified the Police Report intentionally by stating she was "White" and not Mexican although personally known to Defendant Sergeant Scotty Bach.

Defendant Scotty Bach, who was the one arriving later on the scene, was the one who instructed the other Defendants to arrest Plaintiff.  Plaintiff strongly believes Defendant Bach was acting as a friend of Plaintiff's ex-husband, former SPD Officer, Aaron Reynolds in retaliation against Plaintiff.  He denied knowing her at the time although evidence attached hereto and incorporated herein by reference clearly shows otherwise.  This violated her Constitutional rights.

Plaintiff was denied equal protection under those laws by all Defendants named in this action.

## VII.  <u>UNITED STATES OF AMERICA V. CITY OF SEATTLE</u>

That it is established fact that the SPD has been violating Seattle Citizen's rights whether by illegal arrests, discriminatory actions and/or causing their death.  In the <u>United States of America v. City of Seattle</u>, 12 Civ. 1282 (JLR), it states that:

<u>"On December 16, 2011, DOJ released its report ("DOJ Report," Dkt. No. 1-1) announcing that it had found reasonable cause, under Section 14141, to believe that SPD had engaged in a pattern or practice of excessive force. Specifically, the 67-page DOJ Report asserted that SPD had engaged in unjustified use of impact weapons, unjustified escalation of minor encounters into force events particularly against individuals with mental illness or those under the influence of alcohol or drugs, unjustified use of force against persons who were restrained or simply exercising their First Amendment rights, and unjustified use of force by multiple officers. The DOJ Report also asserted that this pattern or practice of using unlawful force derived from SPD's systematic failure to implement adequate policies, procedures, training, and oversight."</u>

COMPLAINT - 16

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

"11. In January and February 2012, DOJ met with the City's elected officials, including its Mayor, City Attorney, and City Council. During the course of approximately seven months, the Parties conducted extensive negotiations over potential revisions to SPD's policies, procedures, and supervisory practices that would prevent a pattern or practice of constitutional violations as alleged by the United States."

Exhibit "6".

Unfortunately, few things have changed for the better, resulting in the 2017 City of

Seattle Ordinance.

In the May 22, 2017 City of Seattle Ordinance 125315 it states:

"K. The goals of this ordinance are to institute a comprehensive and lasting police 23 oversight system that ensures that police services are delivered to the people of Seattle in a 7 1 manner that fully complies with the Constitution and laws of the United States and State of 2 Washington, effectively ensures public and officer safety, and promotes public confidence in 3 SPD and the services that it delivers. To accomplish these goals, The City of Seattle has 4 committed to strengthen elements of Seattle's existing system including building a strong 5 community-based entity with authority to review and weigh in on police policies and assess the 6 responsiveness of SPD, The City of Seattle, and accountability system professionals to 7 community concerns, which has been missing in previous reform efforts. 8 L"

Exhibit "12"

Unfortunately, few things have changed and any changes have been negative and/or

erratic.

AP October 2020 – "SEATTLE (AP) — A Seattle police officer who slammed a protester's head to the ground, another who punched a demonstrator in the head a half dozen times and a third officer who put his knee on the necks of two looting suspects violated policies against using excessive force, an independent agency tasked with investigating police misconduct said Friday.

Protests erupted in Seattle and across the country this summer after George Floyd was killed by a Minneapolis police officer. Since May, the office has received 19,000 complaints about police misconduct during protests. The office has released two batches of reports with the latest made public Friday.

The Seattle police chief has not made any decisions about disciplining the officers, said Mark Jamieson, a police spokesman. The officers were not named in the reports because the union contract with the city prohibits disclosing their identities.

Also under the contract, when the Office of Police Accountability believes an officer committed a crime, the office sends the case to the Seattle Police Department and asks for a criminal investigation — a system that the office's director, Andrew Myerberg, said is flawed because of a possible conflict of

COMPLAINT - 17                                    Raquel Reynolds
                                                 5642 44th Ave. SW
                                                 Seattle, WA 98136
                                                 (206) 258-1000

interest."

"The Seattle Community Police Commission said disciplinary decisions for officers who used excessive force are being made under a flawed system created by the current police contracts. The contacts make it hard to fire a problem officer, allow guilty officers to appeal their case to a backlogged arbitration system, and keep the disciplinary cases closed to the public, the commission said."

May 21, 2021 "SEATTLE — Capitol Hill Pride will ban police at its June march and rally in Seattle, because the organization isn't confident Seattle officers will protect the public's right to protest.

The organization announced the ban Friday, saying it will ask police to remain on the perimeter of the rally at Cal Anderson Park on June 26-27.

To the safety and courtesy of the LGBTQ and diversity community as well as the general public our responsibility is to present a safe event and is dedicated to creating an atmosphere free of fear or harm for members of the community,  Capitol Hill Pride Directors Charlette LeFevre and Philip Lipson said in a release.

Capitol Hill Pride cited ongoing lawsuits against alleged Seattle police misconduct during last summer's protests, the role of six Seattle police officers in the U.S. Capitol siege on Jan. 6 and "ongoing concerns of white supremacy views" within police departments as reasons behind the ban.

For its rally, Capitol Hill Pride said it hoped to work more closely with the fire department and have a medic unit on site."

"The Seattle Times - May 26, 2021 at 12:49 pm

**Seattle police chief demotes commander in charge during 'pink umbrella' protest clash**
Interim Seattle police Chief Adrian Diaz's decision comes two weeks after he announced he was overturning a recommendation to discipline a lower-ranking officer who gave... Updated 4:39 pm"

There is no Police reform or for that matter consistency in the SPD.  Governor Inslee

recognized this and consequently signed dozens of bills into law May 18, 2021.

"NPR May 18, 2021

Calling it a "moral mandate," Washington Gov. Jay Inslee, a Democrat, signed a dozen bills into law on Tuesday that backers hope will improve policing in the state, reduce the use of deadly force and ensure that when deadly encounters do occur, the investigations are thorough and independent.
"These bills are all going to work in coordination with one another to create a system of accountability and integrity stronger than anywhere else in the nation," Inslee said in remarks before he signed the bills.

COMPLAINT - 18                                        Raquel Reynolds
                                                     5642 44th Ave. SW
                                                     Seattle, WA 98136
                                                     (206) 258-1000

The legislature passed the police accountability measures in response to sweeping calls, nationally and locally, to reform policing following the killings of Black Americans like George Floyd and Breonna Taylor. In Washington, the death of Manuel Ellis at the hands of Tacoma police in March 2020 also galvanized reform efforts.

"It is my hope that other families will not have to endure what I did in order to get justice and reclaim my son's legacy," said Sonia Joseph of the Washington Coalition for Police Accountability whose 20-year-old son Giovonn Joseph-McDade was killed by police in Kent, Wash., in 2017.

The focus of the bills runs the gamut from tactics officers use in the field, to how deadly force incidents are investigated, to the circumstances under which officers can be decertified.

In a statement Tuesday, the Washington Black Lives Matter Alliance praised the suite of police accountability measures as a "potential sea change." But the organization also cautioned that the next test will be in how the new laws are implemented.

"These laws must now be enforced. That's up to police and prosecutors, judges and juries, administrators and adjudicators. And it's up to us," the statement said.

Other bills signed by Inslee on Tuesday will establish a statewide use of force database, ensure that police agencies notify prosecutors about officers with credibility issues and make it easier for families to sue the police over deadly force encounters.

A final bill creates a state-funded grant program administered by the Department of Commerce to fund local projects aimed at building partnerships between communities and law enforcement.

"All of these bills together I think are a constellation of efforts to create accountability and justice within the system, and I think it's going to make things safer," said Rep. Johnson who is a member of the legislature's Black Members Caucus.

Despite the plethora of bills that passed this year, a number did not. They include a measure to authorize the state attorney general to prosecute cases of police deadly force, a bill to increase the minimum age of police recruits and a requirement that police departments with at least 15 officers to have a community oversight board.

Another bill, which was a top priority of victims' families this year, would have made it easier to sue individual officers in state court for alleged constitutional violations by ending so-called qualified immunity. Last year, Colorado managed to pass a bill to do away with the practice.

Several, if not all, of those bills are likely to be reconsidered during the 2022 legislative session.

"This year was a first step toward greater accountability and justice in the system, but it's definitely not the end. It's just the floor, not the ceiling," Johnson said.

COMPLAINT - 19

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

The bills signed Tuesday include:

- A bill that bans the use of chokeholds and neck restraints by officers, restricts the use of tear gas by police and prohibits police agencies from acquiring military equipment. The bill also requires uniformed officers to be identifiable to citizens, bars vehicle pursuits except in certain exigent circumstances and bans the use of no-knock search warrants. Additionally, the bill creates a workgroup to develop a statewide policy on the training and use of police dogs.

- A measure that establishes a new Office of Independent Investigations within the governor's office to investigate police deadly force incidents that occur after July 1, 2022. The office will have the authority to investigate earlier incidents if new evidence comes to light. The office will have a director, a team of non-law enforcement investigators and be overseen by an 11-member advisory board. In addition to training on how to conduct criminal investigations, the investigators will also receive training on topics such as the history of racism in policing and implicit and explicit bias.

- A "reasonable care" standard that requires officers to employ de-escalation tactics, use the least amount of physical force necessary and limits the use of deadly force to situations where there's an imminent threat of serious injury or death. The bill requires the Attorney General's office to publish model policies on use of force and de-escalation by July 1, 2022 and that by December 1 of that year all law enforcement agencies adopt policies consistent with that guidance.

- Sweeping changes to the state's Criminal Justice Training Commission (CJTC) which trains and certifies peace officers in Washington. Under this bill, CJTC's mission will expand to focus broadly on the integrity, effectiveness and professionalism of police officers with the goal of promoting public trust and confidence. To that end, the commission itself will expand from 16 to 21 members and add civilians so that the majority of the membership is made up of non-law enforcement representatives. CJTC's authority will also be expanded to give it the ability to temporarily suspend a police officer's certification and make it easier to decertify an officer for misconduct. The bill also expands background checks for would-be officers and creates a publicly searchable database of complaints and disciplinary actions against officers. One of the goals of the legislation is to prevent problematic officers from moving from department to department.

- A requirement that officers intervene if they witness a fellow officer using excessive force and render first aid to the victim if needed. The bill also requires officers to report to a supervisor any wrongdoing they witness on the part of another officer. While individual departments may already have such policies in place, this creates a statewide mandate for all officers."

Unfortunately, Plaintiff was arrested August 28, 2020 and was under prior failed police training and accountability.  Plaintiff also was under the failed direction/supervision of Defendant "Scotty" Bach who took part in the US Capitol Insurrection on January 6, 2021 and is under investigation for other actions as are other named Defendants.  Plaintiff was consequently

COMPLAINT - 20

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

discriminated against for her divorce of Aaron Reynolds, a former SPD officer with Defendant Bach, and later with Homeland Security, and extreme opposing political views.

Plaintiff submitted a written Complaint to OPA Exhibit "23" which was later denied Exhibit "24". This denial in light of numerous legal actions against Defendants and taking part in a National disgrace on January 6, 2021.

OPA has been under scrutiny for some time because of their failure to properly nor thoroughly investigate and actually hold Defendants responsible for their actions.

Plaintiff requests that this Court will honor her protections under the US Constitution, the City of Seattle and Seattle Police Department Ordinances, laws, regulations as a matter of law.

## VIII.  DAMAGES

| | |
|---|---|
| EMOTIONAL DISTRESS: | $3,500,000.00 |
| INFLICTION OF PHYSICAL INJURIES: | $ 500,000.00 |
| UNLAWFUL ARREST/ASSAULT AND BATTERY: | $3,000,000.00 |
| FOURTH AMENDMENT RIGHTS DENIAL: | $1,000,000.00 |
| FOURTEENTH AMENDMENT RIGHTS DENIAL: | $1,000,000.00 |
| DIRECT COSTS INCURRED: | $ 50,000.00 |
| LOSS OF INCOME RENT: | $ 7,000.00 |
| LOSS OF INCOME SNIFF SPOT: | $ 36,000.00 |

## IX.  EXHIBITS

1. Insurrection January 6, 2021 SPD Six Officer Involvement.

2. Transcript 9-1-1 call by Plaintiff 8-28-20.

3. Police Report 8-28-20.

4. Notice of Charges Pending 8-29-20.

COMPLAINT - 21

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

5. Transcript 9-1-1 call by Martinez.

6. Case Law:

<u>United States of America v. City of Seattle</u>, 12 Civ. 1282 (JLR);

<u>In the Court of Appeals of the State of Washington, Division Three, State of Washington, Respondent v. Kenneth Leroy Stephens</u>, Appellant, No. 36542-5-III (2020) Unpublished Opinion.  When is an arrest an arrest?

<u>State v. Robinson</u> (1950), 72 A. (2d) (Me.) 260;

<u>Tufte v. Tacoma</u>, 71 Wn.2d 866, 870, <u>431 P.2d 183</u> (1967);

<u>State v. Rupe</u>, 101 Wn.2d 664, 683-84, 683 P.2d 571 (1984);

<u>State v. Marcum</u>, 149 Wn.App. 894, 902-03, 910, 205 P.3d 969 (2009);

<u>State v. Gering</u>, 146 Wn.App. 564, 566-67, 192 P.3d 935 (2008);

<u>State v. Radka</u>, 120 Wn.App. 43, 48-50, 83 P.3d 1038 (2004);

<u>Kochel, Wilson, and Mastrofski</u>, (2011); <u>Lytle</u>, (2014); and

<u>Sampson and Lauritsen</u>, (1997); <u>Tonry</u>, (1995).

7. Photographs:

Plaintiff's bruising and follow-up medical report from the incident.

Enrique Martinez's injuries following DV assault by Martinez.

Lock alleged to have been in box by Martinez 8-28-20.

Maria Martinez "scratch" 8-28-20.

8. April 28, 2021 at 9:35 am PDT By Associated Press.

SEATTLE — The Seattle Police Department said more than 200 officers have left their jobs since last year.

9. Cops for $1,000 a day: How Seattle spends millions hiring off-duty officers, but does little to monitor their moonlighting.

10. Municipal Court Maria Martinez Prior DV Assault.

COMPLAINT - 22

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

11. Emails indicating personal relationship by and between Plaintiff and "Scotty" Bach, Monty Moss.

12. City of Seattle, Ordinance 125315, Council Bill 118969 dated May 22, 2017.

13. Enrique Martinez Statement.

14. RCW 10.31.100 (d).

15. Letter regarding eviction of Martinez.

16. KUOW 94.9FM All Things Considered 2019 SPD Partial Exit Interviews of some, but not all of eighteen (18) recorded.

17. Police Incident Report 8-28-20.

18. Offer to buy Martinez residence in Island County, Water bill, Tax bill all sent to David and Grace Martinez' address, not Plaintiff's residence address.

19. Lease Agreement Raquel Reynolds and David and Grace Martinez 1-15-17.

20. Porter Feller Suicide.

21. Charter Review City of Seattle, King County – May 2021.

22. Leading conversation between Martinez and Officer Barreto.

23. Plaintiff's Complaint re: Incident.

24. OPA

      Denial of Complaint – Closed Case Summary

      OIG Partial Certification of OPA

      What is Expedited Investigation

      DivestSPD

COMPLAINT - 23

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000

**WHEREFORE, Plaintiff, RAQUEL REYNOLDS**, now prays for judgment against the Defendants, City of Seattle, Seattle Police Department, and Scotty Bach and Jane Doe Bach, Pete Cavinta, Jr., and Jane Doe Cavinta and German Barreto and Jane Doe Barreto, Kira Guzman and John Doe Guzman, Daniel Kim and Jane Doe Kim and Raymond Fischer and Jane Doe Fischer as follows or an amount to be proven at trial:

| | | |
|---|---|---|
| 1. | City of Seattle | $4,072,500.00 |
| 2. | Seattle Police Department | $4,072,000.00 |
| 3. | Defendant Cavinta, Jr. and Jane Doe Cavinta | $ 145,000.00 |
| 4. | Defendant Scott Bach and Jane Doe Bach | $ 371,000.00 |
| 5. | German Barreto and Jane Doe Barreto | $ 145,000.00 |
| 6. | Kira Guzman and John Doe Guzman | $ 145,000.00 |
| 7. | Daniel Kim and Jane Doe Kim | $ 145,000.00 |
| 8. | Raymond Fischer and Jane Doe Fischer | $ 145,000.00 |

For such other and further relief as the Court deems just and equitable.

DATED THIS 20th day of September, 2021.

*Raquel Reynolds*
_____

RAQUEL REYNOLDS, Plaintiff, Pro se

COMPLAINT - 24

Raquel Reynolds
5642 44th Ave. SW
Seattle, WA 98136
(206) 258-1000