UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAQUEL REYNOLDS, a single person,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF SEATTLE; et al.,<br><br>        Defendants. | NO. 2:21-CV-01560-RSM<br><br>CITY OF SEATTLE AND DEFENDANT OFFICERS' MOTION TO DISMISS UNDER FRCP 12 (c)<br><br>NOTED FOR CONSIDERATION: November 4, 2022<br><br>*Without Oral Argument* |

## I.    <u>INTRODUCTION AND RELIEF REQUESTED</u>

COME NOW DEFENDANTS, by and through undersigned counsel, and respectfully request that this Court dismiss plaintiff's Complaint in its entirety with prejudice under FRCP 12(c).

Plaintiff's alleges claims against the City of Seattle, its various departments, and five of its police officers (hereafter "Defendants") pursuant to 42 U.S.C. § 1983 as well as state law assault, battery, and false imprisonment claims. Plaintiff's Complaint and associated pleadings, taken in the light most favorable to her, do not disclose a constitutional violation or a violation of state law and should be dismissed under Rule 12(c).

## II.    STATEMENT OF MATERIAL FACTS

Plaintiff's lawsuit arises out of her mandatory arrest during a domestic violence dispute on August 28, 2020. This dispute, between plaintiff and her sister, Maria Martinez[1], concerns the ownership of a residence, with plaintiff alleging that Maria Martinez is unlawfully occupying a home plaintiff owns. (Dkt. # 1-1, Plaintiff's Complaint at 4). On August 28, plaintiff alleged that her brother, Enrique Martinez, and she entered the basement of that home to throw away some items therein. *Id*. at 5. After her brother had left and as plaintiff was leaving the basement carrying a small, empty box, Ms. Martinez "suddenly came running" into the back alley where a physical altercation ensued. *Id.*

Afterward, plaintiff called 911, as did Maria Martinez a few minutes later. *Id*. at 6. Each reported an assault by the other. *Id*. The defendant SPD officers[2] arrived a short time after. *Id*. at 7. Officer Cavinta contacted plaintiff outside the home first. *See* Dkt. # 1-3 (SPD Incident Report) at 25.[3] According to the incident report, plaintiff began by explaining the history of her residential property dispute with Maria Martinez. *Id*. She stated that she and Enrique Martinez (also present for the interview) arrived at the home to check on some newly planted trees. Enrique left and

---

[1] Plaintiff, who filed this action under her former married name (Raquel Reynolds), has returned to using her maiden name, Martinez. Her sister, late brother, and parents share the same last name. For clarity, this motion refers to Plaintiff as such and to her family members by their full names.

[2] Officer Daniel Kim was not present during any of the interactions detailed in the Complaint and was named in the General Offense Report by mistake in place of a different Officer Kim. (*See* Dkt. # 8, City of Seattle's Answer at 7.) However, the identity of the Officer Kim in question is immaterial to whether that Officer Kim violated any of Plaintiff's constitutional rights.

[3] Plaintiff incorporates the police report by reference and does not allege that it is inauthentic, so this court may consider it as part of her Complaint. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (2010).

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 2
(NO. 2:21-cv-01560-RSM)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

plaintiff went inside the home's basement to retrieve a box. Plaintiff told the officers that shortly after she emerged from the basement, Maria Martinez rushed out of the house and attacked her. When asked to describe the assault, plaintiff gave "inconsistent" answers and "could not provide details." *Id*. Officer Cavinta asked how Maria Martinez assaulted plaintiff, and demonstrated a closed-fist punch, an open-palm slap, and a hammer fist. Plaintiff denied being struck in any of these ways and, when asked to demonstrate, "held her arm in a horizontal manner across and in front of her lower neck area, but then she said she was not sure." *Id*. at 26. She also said that Maria Martinez pushed her, but that she caught herself before she fell. *Id*. Plaintiff said that multiple people witnessed the assault but that none of them were in the area when police arrived. *Id*. Officers did not observe any injuries to plaintiff. *Id*. When asked how Maria Martinez injured her, plaintiff "said she previously had surgery on her neck" and Officer Cavinta did not observe any "fresh injuries, marks, scratches, or redness on her throat area." *Id*.

Officers also questioned Maria Martinez. *Id*. They observed a "scratch" on Maria Martinez's arm which Officer Cavinta described in his police report as a 3 to 4-inch abrasion to the skin that was not bleeding. *Id*. Plaintiff submitted a photograph of Maria Martinez's injury as an attachment to her Complaint. (*See* Dkt. # 1-2 at 77.) Maria Martinez told officers that she got the abrasion when plaintiff grabbed and pulled on her arm during the struggle over the box. (Dkt. # 1-3 at 26.) Maria Martinez demonstrated how plaintiff grabbed and tugged on her left arm. *Id*. She also complained of pain to her left wrist. *Id*. The Fire Department was called and provided Maria Martinez with an ice pack, and she declined further aid. *Id*. In his report, Officer Cavinta stated that "Based on [Maria's] narrative and the visible minor injuries and complaint of pain to

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 3
(NO. 2:21-cv-01560-RSM)

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

her left arm, there was probable cause to arrest [plaintiff] as the primary aggressor for domestic violence assault." *Id*.

The officers arrested plaintiff as mandated by Washington state law in cases of reported domestic violence. *See* RCW 10.31.100(2)(d). Plaintiff's mother Grace Martinez, who had come to the scene from her nearby home and is not alleged to have witnessed the assault herself, attempted to stop the officers from arresting plaintiff, stating that they were arresting the "wrong person" and that Maria Martinez caused her own injuries. (Dkt. # 1-1 at 9.) Grace Martinez became upset and demanded that the officers take plaintiff to her parents' home six blocks away in order to obtain medication for plaintiff instead of taking her to jail. *Id*. At one point, Officers had to physically block Grace Martinez from attempting to prevent plaintiff's arrest. (Dkt. 1-3 at 26.)

Plaintiff was placed in handcuffs. Officer Kira Guzman performed a "finger test" on the handcuffs, ensuring that they were applied loosely enough that Guzman could fit one finger between plaintiff's wrist and the cuff. (Dkt. # 1-1. at 11.) When plaintiff complained of shoulder and wrist pain, Officer Guzman offered to "double-cuff" the plaintiff, which involves using two sets of handcuffs linked to each other by one bracelet with the other bracelets around the arrestee's wrists, affording the arrestee greater freedom of movement while still ensuring that he or she is secured. *Id*. After being handcuffed, the plaintiff was placed in one of the officers' patrol vehicles to separate her from her family and de-escalate the incident. (*See* Dkt. # 1-5 (OPA Summary of Body-Worn Video) at 124.) Plaintiff was also searched incident to arrest. (Dkt. # 1-1 at 13.)

After plaintiff was arrested, the officers screened the arrest with Sergeant Scotty Bach. (Dkt. # 1-1 at 15). The screening took place a few blocks away to prevent further escalation

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 4
(NO. 2:21-cv-01560-RSM)

**Christie Law Group, PLLC**
2100 Westlake Avenue N., Suite 206
Seattle, WA 98109
206-957-9669

between the plaintiff's parents and the officers. (Dkt. # 1-5 at 124.) During the screening, plaintiff complained to Sergeant Bach of pain, but when he tried to inspect her for injuries plaintiff told him that there was nothing to see because the pain stemmed from pre-existing conditions due to her neck injury. *Id.* When Sergeant Bach offered to have the Fire Department come to check her injuries, plaintiff stated (incorrectly) that the Fire Department had already done so. *Id.* Plaintiff attempted to engage Sergeant Bach in a discussion about whether he knew who she was, which he denied. *Id.*; (Dkt. # 1-1 at 16.) She declined Sergeant Bach's repeated offer to be screened by the fire department, an ambulance, or a nurse. (Dkt. # 1-5 at 124.) Sergeant Bach then ended the arrest screening and directed Officer Guzman to take plaintiff to jail. (Dkt. # 1-1 at 15.) After the screening was complete, plaintiff was transported to King County Jail and held overnight. *Id.* at 14. She was released the next day without charges. (*Id.*; *and see* Dkt. # 1-3 (Notice of Charges Pending) at 36.)

Subsequently, plaintiff complained to Seattle's Office of Police Accountability (OPA). (*See* Dkt. # 1-5 at 123-125.) Plaintiff's complaint was investigated, a process which included interviewing the plaintiff, analyzing BWV of the officers involved, and rendering a determination as to whether the conduct captured by BWV constituted a violation of department policies (here, the policies requiring probable cause for arrest, and prohibiting officers taking police action based upon conflicts of interest). *Id.* OPA's investigation determined that plaintiff's arrest was supported by probable cause. *Id.* at 125. In addition, OPA analyzed the conduct of Sergeant Bach to determine whether his alleged friendship with plaintiff's spouse caused him to arrest the plaintiff. *Id.* OPA determined that it did not, in part because plaintiff was already under arrest when Sergeant Bach

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 5
(NO. 2:21-cv-01560-RSM)

**Christie Law Group, PLLC**
2100 Westlake Avenue N., Suite 206
Seattle, WA 98109
206-957-9669

arrived. *Id.*

### III.  ISSUES PRESENTED

1.  Should plaintiff's Fourth Amendment claims be dismissed because officers had probable cause to arrest her for domestic violence assault, and to search her incident to arrest? **YES.**

2.  Should plaintiff's Fourteenth Amendment claims be dismissed because she was not deprived of equal protection or any procedural protections due to her, and because the Defendants' actions did not "shock the conscience?" **YES.**

3.  Should plaintiff's *Monell* claim be dismissed because she has identified no underlying constitutional violations, and no policy, practice, or custom causing any such violation? **YES.**

4.  To the extent that plaintiff has stated any state law claims arising out of her arrest for domestic violence, should those claims be dismissed based on officer immunity under RCW 10.99.070? **YES.**

5.  Should plaintiff's federal civil rights claims be dismissed because the officers are entitled to qualified immunity? **YES.**

### IV.  EVIDENCE RELIED UPON

The defendants move for judgment on the pleadings and other papers that plaintiff has already filed with this Court.

### V.  ARGUMENT

The following undisputed facts come from plaintiff's Complaint and attachments:

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 6
(NO. 2:21-cv-01560-RSM)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

- On August 28, 2020, plaintiff was involved in a physical altercation with her sister, Maria Martinez. (Dkt. # 1-1 at 5.)

- Plaintiff called 911 and reported that Maria Martinez assaulted her. Maria Martinez also called police and reported that plaintiff assaulted her. (*Id.* at 6.)

- Maria Martinez and plaintiff were the only witnesses to the altercation who gave statements to the police. (Dkt. # 1-3 at 26.)

- When officers arrived, they interviewed plaintiff regarding the alleged assault. Plaintiff told them that she was not sure precisely how she was attacked and officers did not observe any visible injuries to her person. (*Id.*)

- Officers also interviewed Maria Martinez. During the interview, they observed a 3 to 4-inch abrasion on Maria Martinez's arm. Maria Martinez described the incident and was seen by Fire Department personnel. (*Id.*)

- Plaintiff was arrested, handcuffed, and placed in the back of an SPD patrol vehicle. When she complained of pain related to the handcuffs, Officer Guzman offered to use a double set of handcuffs. (Dkt. # 1-1 at 11.)

- The officers on the scene called a sergeant, Scotty Bach, to screen the arrest. When plaintiff complained of pain and injury, Sergeant Bach offered to have the Seattle Fire Department or a medic check her for injuries. Plaintiff refused. (Dkt. # 1-5 at 124.)

- Plaintiff was transported to King County Jail where she was held overnight. The next day, plaintiff was released without charges. (Dkt. # 1-1 at 14.)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

Though plaintiff's complaint raises general allegations of police misconduct unrelated to her own arrest on August 28, 2020, this case is straightforward. Defendant officers responding to a report of assault developed probable cause to believe that plaintiff was the primary aggressor in a domestic violence incident. Officers arrested plaintiff because Washington mandates arrest when officers develop probable cause for domestic violence. Here, probable cause operates as a complete defense to plaintiff's Fourth Amendment claims. Plaintiff's Equal Protection claim fails because she has not alleged any different treatment based on membership in a protected class, and her "class-of-one" theory is unsupported by caselaw. Further, because plaintiff can identify no underlying constitutional violation, her *Monell* claim fails. Finally, the officers are entitled to statutory immunity against the state law claims, and to qualified immunity for all of them.

## A. FRCP 12(c) Standard.

Judgment on the pleadings is properly granted where the moving party establishes on the face of the pleadings that there is no dispute of material fact, and the moving party is entitled to judgment as a matter of law. *Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012). This is identical to a 12(b)(6) analysis. *Id.* The court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the nonmovant. *Id.* Plaintiffs' conclusory statements and formulaic recitations of a claim's elements are not entitled to the presumption of truth in determining if a claim is plausible on its face. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009)). Rather, plaintiffs must plead "non-conclusory factual content and reasonable inferences" which entitle them to relief. *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). A plaintiff's conclusory allegations and unwarranted inferences are insufficient to defeat a

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 8
(NO. 2:21-cv-01560-RSM)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

motion to dismiss. *Benavidez v. County of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021). The Court may also consider materials incorporated into the complaint. *Coto Settlement*, 593 F.3d at 1038.

**B. Plaintiff's Fourth Amendment Claims Fail Because Probable Cause Supported Her Arrest and Incident Search.**

Plaintiff raises two related Fourth Amendment Claims. First, she alleges that her arrest constituted an illegal seizure because it was done "without [probable] cause." (Dkt. # 1-1 at 13). Second, she alleges that she was "unreasonably searched" in violation of the Fourth Amendment. *Id*. Stated simply, plaintiff alleges two Fourth Amendment violations: (1) unlawful arrest and (2) search without probable cause. Probable cause defeats both claims.

1. Plaintiff's Arrest Was Supported By Probable Cause and Was Therefore Both Constitutionally Reasonable and Mandatory Under State Law.

An arrest is a seizure under the Fourth Amendment and must therefore be reasonable under the circumstances. *District of Columbia v. Wesby*, 138 S. Ct. 577, 585 (2018). Where an arrest is supported by probable cause, it is reasonable. *Id*.

The essence of probable cause is probability. Probable cause exists when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a prudent [person] in believing the arrested person had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 83 S. Ct. 407 (1963). Probable cause determinations are "not technical; they are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act." *Id*. Probable cause requires only a "probability or substantial chance of criminal activity, not an actual showing

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 9
(NO. 2:21-cv-01560-RSM)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

of such activity," and is generally not a high bar. *Wesby*, 138 S. Ct. at 586.

Where officers have probable cause to arrest domestic violence suspects in Washington, they have a mandatory duty to do so under the state's domestic violence statutes. *Donaldson v. City of Seattle*, 65 Wn. App. 661, 670, 831 P.2d 1098 (1992) (*rev. denied*, 120 Wn.2d 1031, 847 P.2d 481 (1993)). Where both parties to a domestic violence incident claim to be the victim of an abuse not witnessed by the officers, officers are required to arrest the "primary physical aggressor." RCW 10.31.100(2)(d). That statute directs officers to consider the following factors: (A) intent to protect victims of domestic violence; (B) the comparative extent of the parties' injuries or reasonable fear of injury; and (C) the domestic violence history of the involved parties. *Id.*

A plaintiff's claim that she acted in self-defense does not vitiate probable cause to arrest her where probable cause is otherwise indisputably established. *McBride v. Walla Walla County*, 95 Wn. App. 33, 40, 975 P.2d 1029 (1999) (*rev. denied*, 138 Wash. 2d 1015, 989 P.2d 1137). In other words, a claim of self-defense is a defense to a suspect's conviction for the underlying domestic violence assault at trial but does not immunize her from mandatory arrest. Moreover, where officers "could reasonably conclude" that one party is the primary aggressor in a fight involving both, it is not a Fourth Amendment violation to arrest the party they determine was the primary aggressor and not the other party, despite a dispute as to which party started the fight. *Ray v. City of Lacey*, No. C09-5636 RJB, 2010 WL 3220108 at *12-13, (W.D. Wash., Aug. 10, 2010) (finding no underlying Fourth Amendment violation for the purposes of a qualified immunity analysis).

Here, plaintiff does not dispute that Maria Martinez and she engaged in a physical confrontation, and that during the confrontation Maria Martinez sustained a visible injury. (Dkt. # 1-

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 10
(NO. 2:21-cv-01560-RSM)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1 at 5; Dkt. # 1-2 at 77.) The injury was consistent with Maria Martinez's account of the incident.

(Dkt. # 1-3 at 23.) Though plaintiff describes Maria Martinez's scratch as one "allegedly" sustained

during the encounter, she does not dispute that the scratch was caused by their fight. (Dkt. # 1-1

(Complaint) at 6). Given these facts, it was reasonable for the officers to conclude that plaintiff, and

not Maria Martinez, was the primary aggressor because plaintiff caused the more significant visible

injury notwithstanding the fact that Maria Martinez instigated the confrontation. *Ray*, 2010 WL

3220108 at 12. Where an officer determines that one party is the primary aggressor, he develops

probable cause for an arrest and thus "[has] a mandatory duty to arrest pursuant to the domestic

violence section" of the RCW. *McBride*, 95 Wn. App. at 40. Further, because the arrest was supported

by probable cause, it did not violate the Fourth Amendment. *Wesby*, 138 S. Ct. at 586. Defendants are

entitled to a dismissal of plaintiff's claims based on an alleged unlawful arrest.

    2.  <u>The Search Incident to Arrest Was Reasonable Because Probable Cause Supported
Plaintiff's Arrest.</u>

    While the Fourth Amendment generally prohibits searches without a warrant, that

requirement is subject to several well-established exceptions. *United States v. Smith*, 389 F.3d 944,

950 (9th Cir. 2004). Among those exceptions is the search incident to arrest. *Id.* (citing *Chimel v.

California*, 395 U.S. 752, 762-63, 89 S. Ct. 2034 (1969)). Moreover, the Fourth Amendment itself

permits such searches. "In the case of a lawful custodial arrest [supported by probable cause] a full

search of the exception is not only an exception to the warrant requirement…, it is also a 'reasonable'

search under that Amendment." *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467 (1973).

    Because the officers had probable cause to arrest Plaintiff, her search incident to arrest did not

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 11
(NO. 2:21-cv-01560-RSM)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

violate the Fourth Amendment. *Id*. This Court should dismiss all of her Fourth Amendment claims.

**C. The Defendant Officers Did Not Violate Plaintiff's Fourteenth Amendment Rights.**

Plaintiff alleges that defendants violated her right to equal protection, procedural due process, and substantive due process, all of which are protected by the Fourteenth Amendment.

1. <u>Defendants did not violate plaintiff's right to equal protection.</u>

To proceed with an Equal Protection claim, a plaintiff must first be able to show that the action was "applied in a discriminatory manner or impose[d] different burdens on different classes of people." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).

Where a plaintiff argues that she has been singled out not because of membership in a protected class, but rather singled out as a so-called "class of one," she must demonstrate that officers "(1) intentionally (2) treated her differently than other[s similarly situated], (3) without rational basis." *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011). Such a classification is upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463-64, 101 S. Ct. 715 (1981). Evidence of an officer's mere exercise of discretion to arrest one person and not another is generally insufficient to sustain an equal protection claim. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 602, 128 S. Ct. 2146 (2008).

Plaintiff cannot establish an equal protection claim based on race. While she complains about the way she was treated by the defendant officers, there is no evidence that she was treated ***differently*** on account of her race. Indeed, her sole mention of race is her contention that the officers misidentified her whole family as "white" rather than "Mexican." (Dkt. 1 at 16.) However,

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 12
(NO. 2:21-cv-01560-RSM)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

she has no evidence that she was treated ***differently*** or ***worse*** than similarly situated persons of a ***different*** race. *Freeman*, 68 F.3d at 1187. The only person similarly situated to plaintiff here, her sister Maria Martinez, is also "Mexican." (Dkt. # 1-1 at 11-12.)

Plaintiff's "class of one" claim also fails. She contends that she was placed in a class of one by Sergeant Bach because she had once been married to an SPD officer. (*Id*. at 15-16.) However, plaintiff was already seized, handcuffed, placed in the back of a patrol car and transported to a different location by Officer Guzman ***before*** Sergeant Bach arrived to screen her arrest. (*Id*. at 11; Dkt # 1-3 at 26 (noting that "[plaintiff] was taken into custody" prior to being removed from the scene.)) She was already under custodial arrest. *Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009). There is nothing in the pleadings to suggest that the defendant officers arrested her because Sergeant Bach knew of her prior marriage. Instead, the pleadings show that they arrested her "because she was the primary aggressor for domestic violence assault" before Sergeant Bach ever arrived. (Dkt. # 1-3 at 26.)

The actual distinction drawn by officers here, between visibly and non-visibly injured parties to a domestic violence incident, is rational. The legislature directs officers to arrest the primary domestic violence aggressor, and mandates that they consider, "(A) the intent to protect victims of domestic violence under RCW 10.99.010, (B) the comparative extent of injuries inflicted, and (C) the history of domestic violence of each person involved." RCW 10.31.100(2)(d). In weighing the factors, officers are necessarily vested with discretion and their exercise of that discretion cannot support a "class of one" equal protection claim. *Engquist*, 553 U.S. at 602. Whether or not some other weighting of the factors might have produced a different

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

result is not before this Court. *Clover Leaf Creamery Co.*, 449 U.S. 463-64.

2. <u>Defendants did not violate plaintiff's right to procedural due process.</u>

There are two elements to a procedural due process claim: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001). Plaintiff alleges two deprivations: (1) a deprivation of her liberty interest due to an incorrect arrest; (2), a deprivation of her property interest because the officers did not remove Maria Martinez from the home.

Plaintiff's procedural due process claim premised on an incorrect arrest fails as a matter of law. "An incorrect arrest does not provide grounds for a deprivation of liberty without due process if the arrest was made pursuant to…probable cause." *Bretz v. Kelman*, 773 F.2d 1026, 1030-31 (9th Cir. 1985). Because the officers had probable cause, plaintiff's due process claim fails.

Likewise, even presuming that the defendant officers' decision to arrest plaintiff rather than Maria Martinez could constitute a deprivation ***by the defendant officers*** of plaintiff's property interest in the home, there is no legal support for plaintiff's procedural due process claim. Neither intentional nor negligent deprivations of property by state officials violate the Fourteenth Amendment's procedural due process clause where adequate post-deprivation remedies are available under state law. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194 (1984).

Plaintiff has not shown that she is prevented from pursuing eviction or similar proceedings against Maria Martinez. Indeed, Plaintiff's complaint references multiple attempts to serve eviction notices on Maria Martinez. (Dkt. # 1-1 at 5.) Even presuming that the defendant officers "deprived" plaintiff of access to her home notwithstanding that Maria Martinez was already living

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 14
(NO. 2:21-cv-01560-RSM)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

in it before they arrived, plaintiff has not shown that post-deprivation state law remedies such as the eviction process are inadequate to protect her rights. She has not pled a deprivation of process due to her. *Hudson* 468 U.S. at 533.

3. <u>Defendants did not violate plaintiff's right to substantive due process.</u>

The Fourteenth Amendment's substantive due process clause protects individuals against "arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 840-49, 118 S. Ct. 1708 (1998) (*quoting Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963 (1974)). Only the most egregious official conduct can be said to be "arbitrary in the constitutional sense." *Id*. at 846. For conduct to be sufficiently arbitrary and egregious to sustain a Fourteenth Amendment claim, it must "shock the conscience." *Id*. "Conscience shocking" is a very high standard, reserved for very low behavior. *Id*. at 847 n.8. Generally, it provides relief for extreme, bizarre physical abuse. *See Rochin v. California*, 342 U.S. 165, 96 L. Ed. 183, 72 S. Ct. 205 (1952); *Beecher v. Alabama*, 389 U.S. 35, 88 S. Ct. 189 (1967); *Clewis v. Texas*, 386 U.S. 707, 87 S. Ct. 1338 (1967); *Harrington v. Almy*, 977 F.2d 37 (1st Cir. 1992); *Rogers v. City of Little Rock*, 152 F.3d 790, 797 (8th Cir. 1998); *Hemphill v. Schott*, 141 F.3d 412, 419 (2d Cir. 1998). Even where such abuse is alleged, "claims arising before or during arrest are to be analyzed exclusively under the fourth amendment's reasonableness standard rather than the substantive due process standard." *Fontana v. Haskin*, 262 F.3d 871, 881 (9th Cir. 2001) (cleaned up).

At the outset, plaintiff's claims fail because they are all subject to the Fourth Amendment's reasonableness standard. *Id*. In any event, her allegations are limited to being arrested and handcuffed in a normal manner, allegedly causing her unusual pain due to a combination of nerve

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 15
(NO. 2:21-cv-01560-RSM)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

damage, incompletely healed surgery, and COVID symptoms. (Dkt. # 1-1 at 11; 13-14.) This conduct is far from the extreme, conscience-shocking conduct that the substantive due process clause prohibits. Plaintiff's Fourteenth Amendment claim lacks legal support and should be dismissed.

### D. Plaintiff's *Monell* Claim Fails Because There Was No Underlying Constitutional Violation.

Plaintiff is unable to show that she suffered an underlying violation of her constitutional rights. This alone is fatal to her *Monell* claim and justifies this Court dismissing it. *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996). If plaintiff can show an underlying violation, she may maintain a §1983 claim against a municipality *only* if she is able to show that the deprivation of his rights resulted from an unconstitutional custom or policy or a deliberate indifference to a known need to train. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010). The allegedly unconstitutional policy, practice, or failure to train must be the proximate cause of the § 1983 injury. *Van Ort v. Estate of Stanewick*, 92 F.3d 831, 837 (9th Cir. 1996). To impose municipal liability under § 1983 based solely on a single incident, a plaintiff must demonstrate that the incident "was caused by an existing unconstitutional municipal policy [which] can be attributed to a municipal policy maker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S. Ct. 2427 (1985).

Plaintiff's pleadings are totally silent as to how any of Seattle's **policies, practices, or customs** proximately caused her arrest on August 28, 2020. Most of the "conduct" described in her Complaint concerns crowd control tactics wholly unrelated to the August 28, 2020 incident. (Dkt. # 1-1 at 17-18.) The Complaint also describes purportedly ameliorative legislation passed in

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 16
(NO. 2:21-cv-01560-RSM)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

response to actions by departments **other than SPD.** (Dkt. # 1-1 at 18-19 (including the death of Giovonn Joseph-McDade involving Kent police and Manuel Ellis involving Tacoma police.)) To the extent that plaintiff's complaint alleges she was arrested because of defendant Bach's presence in Washington D.C. on January 6, 2021, she does not explain how this could have proximately caused her arrest approximately four months prior, let alone how such private conduct indicates an unconstitutional policy, practice, or custom by SPD.

Simply, plaintiff's general allegations of unconstitutional conduct by **some** SPD officers in the decade between 2011 and 2021 does not suffice to show that **the Defendant Officers** committed unconstitutional acts **against her** on August 28, 2020. Her citation to the 2012 "consent decree" and *U.S. v. City of Seattle* illustrates this point. The United States Department of Justice (DOJ) found over a decade ago that SPD had engaged in a "pattern or practice" of excessive force and racial discrimination. (Dkt. # 1-1 at 16.) Since that time, SPD has undertaken extensive reforms. Nevertheless, Plaintiff cites the DOJ's decade-old findings to conclude that these defendant officers' actions on August 28, 2020 were proximately caused by the 2011 "pattern or practice of excessive force." *Id*. This bare allegation fails on its own terms. *Van Ort*, 92 F.3d at 837. A mere allegation that a municipality has acted in a way covered by a consent decree does not suffice to plausibly show *Monell* liability. *See Loescher v. County of Plumas*, 2:19-cv-1984-KJM-KJN, 2022WL 138478 at *4-5 (E.D. Cal., Jan. 14, 2022).

Moreover, Plaintiff has not identified any incidents similar to her own indicating the existence of some policy or systemic practice of arresting domestic violence victims, or any municipal policymaker whose conduct caused such a policy. Because Plaintiff has fundamentally

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 17
(NO. 2:21-cv-01560-RSM)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

failed to state the elements of a *Monell* claim, and her claim against the City should be dismissed.

**E. Defendants Are Statutorily Immune from Plaintiff's State Law Claims.**

Plaintiff appears to plead state law assault, battery, and unlawful arrest claims against the Defendants. (Dkt. # 1-1 at 8; 11). Defendants are statutorily immune from all of them.

> A peace officer shall not be held liable in any civil action for an arrest based on probable cause, enforcement in good faith of a court order, or any other action or omission in good faith under this chapter arising from an alleged incident of domestic violence brought by any party to the incident.

RCW 10.99.070. This statute immunizes officers "from civil liability for conduct in the course of an arrest or other on-the-scene action such as entering the home to break up a fight." *Feis v. King County Sheriff's Dep't*, 165 Wn. App. 525, 551, 267 P.3d 1022 (2011) (*rev. denied*, 173 Wn.2d 1036, 277 P.3d 669 (2012)).

This was undisputedly a domestic violence incident under plaintiff's allegations. Her allegations establish the existence of probable cause. The officers are immune from any state law claims. *Feis*, 165 Wn. App. at 551.

**F. The Defendant Officers are Entitled to Qualified Immunity.**

The defendant officers are also entitled to qualified immunity for their arrest of the Plaintiff on August 28, 2020. Qualified immunity shields state officials from civil suits unless the plaintiff can show (1) the official violated a statutory or constitutional right, and, if so, (2) the right at issue was "clearly established" at the time of the challenged conduct such that it would have been clear to every reasonable officer that his conduct was unlawful in that situation. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), *abrogated in part by Pearson v. Callahan*, 129 S. Ct. 808 (2009) (it is

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 18
(NO. 2:21-cv-01560-RSM)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

not always necessary to first determine whether a constitutional violation occurred).

In cases involving questions of probable cause, the qualified immunity analysis is "whether (1) there was probable cause for the arrest; and (2) whether it is ***reasonably arguable*** that there was probable cause for arrest" such that reasonable officers could disagree as to the arrest's legality. *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011) (emphasis added). Where reasonable officers can disagree about whether they have probable cause to determine that one party is the "primary aggressor" in a domestic violence context, the officers are entitled to qualified immunity. *Barren v. Roger*, No. 2:11-cv-650-RLH-CWH, 2014 WL 4635710 at *7 (D. Nev., Sep. 16, 2014) (applying parallel Nevada statute).

Under Washington law, a domestic violence call must always result in ***somebody's*** arrest where probable cause is found. RCW 10.31.100(2). Here, both Maria Martinez and plaintiff alleged that the other assaulted her, and though the injuries appeared largely superficial, only Maria Martinez showed visible scratches. The witness interviews were not models of clarity, although Maria Martinez's was clearer. Even presuming a reasonable officer would have doubted that plaintiff should be arrested, the defendant officers are entitled to qualified immunity unless it can be shown that ***every reasonable officer*** would have known it was wrong to arrest plaintiff rather than Maria Martinez. *Barren*, 2014 WL 4635710 at *7; *Ashcroft*, 563 U.S. at 741. The defendant officers are entitled to qualified immunity at the summary judgment phase to prevent the loss of that immunity by allowing this case to continue improperly. *Anderson*, 483 U.S. 646 n.6.

/ / /

/ / /

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

# VI.    CONCLUSION

Plaintiff's claims find no support in the law. Her Fourth Amendment claims fail because the defendant officers had probable cause, and therefore a mandatory duty under Washington law to arrest her. Plaintiff's Fourteenth Amendment claim fails, however construed, because she was not treated differently or worse than any similarly situated person based on her race or other factors; and because she was not deprived of any process the law entitled her to or subject to behavior that is conscience-shocking in constitutional (or any other) terms. Because there was no underlying constitutional violation, there is no *Monell* liability against Seattle itself.   Further, plaintiff fails to allege that the otherwise random allegations of unconstitutional conduct is causally connected to anything that was done to her on August 28.

Finally, Washington's domestic violence law makes the defendant officers immune from state law claims, for which the City is liable only vicariously. The officers are also entitled to qualified immunity because not ***every reasonable officer*** would agree that plaintiff's arrest on these facts was illegal. All individual defendants are entitled to the protection of these immunities from suit before this litigation is permitted to continue further.

For the foregoing reasons, the Defendants respectfully request that the Court dismiss plaintiff's Complaint in its entirety under FRCP 12(c).

/ / /

/ / /

/ / /

/ / /

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

DATED this 10th day of October, 2022.

CHRISTIE LAW GROUP, PLLC

By    */s/ John W. Barry*
      ROBERT L. CHRISTIE, WSBA #10895
      JOHN W. BARRY, WSBA #55661
      Attorneys for Defendant City of Seattle
      2100 Westlake Avenue N., Suite 206
      Seattle, WA 98109
      Telephone: (206) 957-9669
      Fax: (206) 352-7875
      Email: bob@christielawgroup.com
            john@christielawgroup.com

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 21
(NO. 2:21-cv-01560-RSM)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties and counsel of record:

RAQUEL REYNOLDS
5642 44th Ave SW
Seattle, WA 98136
Telephone: (206) 258-1000
Email: policereports2021@gmail.com
Plaintiff, Pro Se


CHRISTIE LAW GROUP, PLLC

By     */s/ John W. Barry*
           JOHN W. BARRY, WSBA #55661
           Attorney for City of Seattle and Defendant
             Officers
           2100 Westlake Ave. N., Ste. 206
           Seattle, WA 98109
           Telephone: (206) 957-9669
           Email: john@christielawgroup.com

DEFENDANTS' MOT. TO DISMISS UNDER
FRCP 12(c) - 22
(NO. 2:21-cv-01560-RSM)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669